UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTIAN L. KEEN, | ) |
| *Plaintiff* | ) ) ) ) Cause No. 1:19-cv-1241 RLM-MPB |
| v. | ) ) |
| CITY OF INDIANAPOLIS, acting by and through its Metropolitan Police Department, DOUGLAS SWAILS, and MALACHI WEST, | ) ) ) ) ) |
| *Defendants* | ) ) |

ORDER

Christian Keen sued Indianapolis Metropolitan Police Department Officers Douglas Swails, Malachi West, and the City of Indianapolis for claims that arose when Mr. Keen was arrested after police executed a search warrant at his house. The defendants have moved for summary judgment on all of Mr. Keen's claims. For the following reasons, the court grants the defendants' motion.

Mr. Keen encountered a former acquaintance, Robert Coffman, at an annual downtown Indianapolis motorcycle event on August 26, 2017. Mr. Keen and Mr. Coffman have a tumultuous history and have known each other since April 2014 when they started riding motorcycles together. Mr. Coffman is a former member of the Rebels Motorcycle Club, which is a one-percenter club (an outlaw motorcycle club). *See generally* Andy Bain, Groups, Gangs, and Associates: Understanding Outlaw Motorcycle Gangs, 64 S.D. L. Rev. 299, 302

(2019). As a one-percenter club, the Rebels exclude from membership anyone who used to be in law enforcement.

Mr. Coffman apparently believes that Mr. Keen is or was a member of the Rebels. Mr. Keen says he isn't and wasn't, and the court accepts that statement as true for summary judgment purposes. Mr. Coffman's beliefs are included only to explain the events of August 26, 2017. Mr. Coffman says that he left the Rebels in 2015 because he learned that Mr. Keen had been in law enforcement but was nevertheless the Rebels' national sergeant at arms. The Rebels discourage dissociation. Mr. Keen's job as the club's national sergeant at arms, Mr. Coffman thinks, was to retaliate against Mr. Coffman. In 2015, Mr. Coffman filed a police report with Detective Douglas Swails accusing Mr. Keen of vandalizing his car by putting homemade puncture devices under the tires. Detective Swails says that he verified much of what Mr. Coffman said about Mr. Keen and opened a gang file on him, though Mr. Keen was never arrested. Mr. Keen denies that he vandalized Mr. Coffman's car, and the court must accept his denial as true.

Back to the day of the motorcycle event: Mr. Keen came across Mr. Coffman and two of his friends on the sidewalk, and Mr. Coffman became confrontational. Mr. Coffman tried to provoke a fight, but Mr. Keen turned and walked away. Mr. Keen eventually ran into a group of his own friends and told them what happened. Mr. Keen's friends decided to go confront Mr. Coffman, and a fight broke out. Mr. Keen didn't join in the fight but instead stood back and took pictures. Law enforcement arrived about 30 seconds later, and the crowd dispersed. Mr. Coffman rode his motorcycle to a local American Legion

Post after the fight and called 911 to file a police report; again, Detective Swails was assigned the case. Mr. Coffman said Mr. Keen hit him in the face with an expandable baton.

Detective Swails obtained a warrant to search Mr. Keen's residence for gang paraphernalia and the expandable baton used to batter Mr. Coffman. Mr. Keen doesn't challenge the validity of the search warrant or claim that the search was illegal. Indianapolis police executed the warrant on September 28, 2017 by telling Mr. Keen as he was leaving his house that they were there to execute a search warrant and that he would be handcuffed. Detective Malachi West arrived a few moments later. Detective West arrived before Mr. Keen was handcuffed, and Detective West ordered officers to handcuff Mr. Keen.

A SWAT team cleared Mr. Keen's residence within a few minutes, and Sergeant Edward Bruce took Mr. Keen inside to read him the search warrant. Mr. Keen told Sergeant Bruce that he had an arm injury and was in pain from the handcuffs. Mr. Keen has had multiple hip and arm injuries from being hit on two occasions by drunk drivers, and the handcuffs were worsening that pain. Sergeant Bruce put Mr. Keen in two sets of handcuffs, putting one cuff from each pair on Keen's wrists and connecting the two sets in the middle.[1] Mr. Keen asked if he could be handcuffed in front rather than behind his back, but Sergeant Brue said that he couldn't. As police officers took Mr. Keen from the house after his arrest, they put Mr. Keen's handcuffs in front of him.

---

[1] Mr. Keen's brief says that Mr. Keen complained of the pain for two hours before Sergeant Bruce added the second pair, but the deposition pages Mr. Keen cited for that timing provide no support for a two-hour period. Doc. No. 53 at 13.

Mr. Keen maintained throughout the search that he wasn't involved in the fight with Mr. Coffman and told Detective Swails that his pictures from the motorcycle event would prove it. Mr. Keen showed Detective Swails some of these pictures on his computer during the search, but Detective Swails wasn't persuaded because he couldn't identify anyone in the pictures and couldn't tell who the photographer was. Mr. Keen said there was a video of the fight on YouTube that showed the baton and that Mr. Keen wasn't involved in the fight. Detective Swails didn't watch any videos though while at Mr. Keen's residence. Mr. Keen also asked Detective Swails if he could be handcuffed in front, but Detective Swails said that he couldn't.

Officers seized several items as evidence, including: various motorcycle club articles of clothing and multiple one-percenter patches (including the Rebels' one-percenter patch), a black pair of brass knuckles, multiple copies of the Rebels Motorcycle Club constitution, multiple one-percenter hats, photographs of individuals in biker garb, a black Kevlar helmet, and a black ledger. In the aggregate, Detective Swails considered these items to be gang paraphilia. No expandable baton was found, though officers seized what appeared to be a black baton; Mr. Keen says it was a rubber hose. Officers also seized a firearm, ammunition, and a large quantity of steroids. Detective Swails knew that Mr. Keen had a prior felony conviction and was prohibited from possessing firearms. Mr. Keen says that the gun was his wife's and that he had a prescription for the steroids. After police completed their search, Detective

Swails arrested Mr. Keen for battery and criminal organization. The State of Indiana later dismissed all charges.

Mr. Keen filed this suit pursuant to 42 U.S.C. § 1983, bringing claims against Detectives Swails and West for false arrest, malicious prosecution, and excessive force in violation of his Fourth Amendment rights. He also asserts a state-law claim against the City of Indianapolis for false arrest in violation of his Fourth Amendment rights, contending that it's vicariously liable for its officers' acts. The defendants have moved for summary judgment on all of Mr. Keen's claims.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011) ("Summary judgment . . . is proper only if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the movant] is entitled to judgment as a matter of law."). The court's function at the summary judgment stage isn't "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making that determination, the court must construe the evidence, and all inferences that can reasonably be drawn from the evidence, in the light most favorable to the non-moving party. Id. at 249, 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ."). The movant bears

5

the burden of showing that there is no genuine issue of material fact, but the non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256.

The defendants argue that Mr. Keen's false arrest claims fail because there was probable cause to arrest Mr. Keen based on the evidence found in Mr. Keen's residence. Detectives Swails and West further argue that they are entitled to qualified immunity on Mr. Keen's excessive force claim. Finally, they argue that Mr. Keen's Fourth Amendment malicious prosecution claim fails because the law doesn't recognize such a claim.

## I.   Mr. Keen's False Arrest Claims

The Fourth Amendment of the U.S. Constitution protects the people against unreasonable arrests. U.S. Const. Amend IV. "An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause." Kelley v. Myler, 149 F.3d 641, 646 (7th Cir. 1998) (citing Jones by Jones v. Webb, 45 F.3d 178, 181 (7th Cir. 1995)); *see also* Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006) ("Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution.").

"Law enforcement officers have probable cause to arrest an individual when 'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent

6

person in believing that the suspect had committed or was committing an offense.'" Id. (citing Sheik–Abdi v. McClellan, 37 F.3d 1240, 1246 (7th Cir. 1994), *certiorari denied*, 513 U.S. 1128 (1995)). "The court evaluates probable cause 'not on the facts as an omniscient observer would perceive them,' but rather 'as they would have appeared to a reasonable person in the position of the arresting officer.'" Mustafa v. City of Chicago, 442 F.3d at 547. "An officer's belief in the existence of probable cause 'need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false.'" Driebel v. City of Milwaukee, 298 F.3d 622, 643 (7th Cir. 2002) (quoting Woods v. City of Chicago, 234 F.3d 979, 996 (7th Cir. 2000)).

Mr. Keen says the police stopped their inquiry into the battery of Mr. Coffman prematurely, because viewing the YouTube video and closer study of Mr. Keen's photos would have shown that it wasn't Mr. Keen who waylayed Mr. Coffman with the baton. The cases Mr. Keen cites for that proposition, though, don't reach as far as his argument requires them to stretch. In BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1986), the court said that police can't ignore clarifying facts, but the level of probable cause hadn't been reached at all; more inquiry was needed to establish probable cause, not to negate it. The court in Fox v. Hayes, 600 F.3d 819, 834 (7th Cir. 2010), discussed, not the need for further investigation after probable cause was established, but rather the defendants' use of disputed facts to establish the existence of probable cause. Finally, in Hodgkins ex rel. Hodgkins v. Peterson, 355 F.3d 1048, 1061 (7th Cir.

7

2004), the court simply held that an officer had ignored what he knew to be true, not that he must continue to investigate with probable cause.

Certainly, there are instances in which a police officer must make further inquiry. But in most instances, "once probable cause has been established, officials have 'no constitutional obligation to conduct further investigation in the hopes of uncovering potentially exculpatory evidence.'" *E.g.*, Spiegel v. Cortese, 196 F.3d 717, 723 (7th Cir. 1999) (quoting Eversole v. Steele, 59 F.3d 710, 718 (7th Cir. 1995)). "A police officer may not ignore conclusively established evidence of the existence of an affirmative defense, but the officer has no duty to investigate the validity of any defense." Hodgkins ex rel. Hodgkins v. Peterson, 355 F.3d at 1061 (internal citations omitted). "Whether an officer has probable cause to arrest depends on the requirements of the applicable state criminal law." Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 761 (7th Cir. 2006) (citing Williams v. Jaglowski, 269 F.3d 778, 782 (7th Cir. 2001)). "[P]robable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause . . . ." Gill v. City of Milwaukee, 850 F.3d 335, 342 (7th Cir. 2017) (quoting Holmes v. Vill. of Hoffman Estates, 511 F.3d 673, 682 (7th Cir. 2007)).

The defendants argue that probable cause existed to arrest Mr. Keen on several different charges, including: battery, criminal organization, unlawful possession of a firearm by a serious violent felon, possession of steroids, possession of a controlled substance, and dealing in a controlled substance. Mr.

Keen's false arrest claim is foreclosed if probable cause existed to arrest him for any of these crimes, so the court will explain its reasoning for only one crime in which it finds there was probable cause—unlawful possession of a firearm by a serious violent felon.

Under Indiana law, "a person who has been convicted of committing a serious violent felony . . . who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Level 4 felony." Ind. Code § 35-47-4-5(a) and (c). Under subsection (b), "'serious violent felony' [includes] . . . stalking . . . ." Ind. Code § 35-47-4-5(b)(22). "Possession of a firearm may be either actual or constructive." Tate v. State, 835 N.E.2d 499, 511 (Ind. Ct. App. 2005). "[A] person who has the intent and capability to maintain control over a firearm has constructive possession." Id. "To prove intent, the State must demonstrate that the defendant knew of the firearms' presence. Such knowledge may be inferred from either exclusive dominion over the premises containing the firearm or from evidence of additional circumstances showing that the defendant had knowledge of the firearm's presence." Id. (internal citations omitted).

Mr. Keen argues that probable cause was missing because the firearm wasn't found on his person but instead in his wife's closet in the bedroom. He says that he didn't know about the firearm and that it actually belonged to his wife. He argues that the defendants haven't provided any evidence showing that Mr. Keen knew of the firearm or establishing that it belonged to him rather than his wife.

9

Knowledge of a firearm can be inferred from circumstances showing that Mr. Keen knew about the firearm's presence, and Mr. Keen can't escape that the firearm was found in a closet in his bedroom. District courts in this circuit have found that probable cause existed for constructive possession of a firearm by a felon in more attenuated circumstances. *E.g.*, Taylor v. Hughes, 2017 WL 1163878, at *8 (N.D. Ill. Mar. 29, 2017) (finding that constructive possession of a firearm existed for a firearm found in a bedroom that the defendant didn't occupy). Whether this evidence was enough to prove Mr. Keen violated Indiana's felon in possession statute beyond a reasonable doubt doesn't matter for today's purposes, because that isn't the standard in determining whether probable cause exists. Mr. Keen had a felony conviction for stalking, and Detective Swails knew that when the search warrant was executed. Discovery of a firearm in the closet of Mr. Keen's bedroom was sufficient to give a prudent person reason to believe that Mr. Keen shared accountability for the firearm. There was probable cause to arrest Mr. Keen for unlawful possession of a firearm by a serious violent felon, and Detective Swails and West are entitled to summary judgment on the federal false arrest claims arising out of Mr. Keen's September 2017 arrest.

Mr. Keen's state-law claim for false arrest against the City of Indianapolis fails for the same reason that his federal false arrest claims do. Indiana law provides that "[a] defendant may be liable for false arrest when he or she arrests a plaintiff in the absence of probable cause to do so." Earles v. Perkins, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003) (citing Miller v. City of Anderson, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002)). "Probable cause for arrest is

demonstrated by facts and circumstances known to the arresting officer that would warrant a person of reasonable caution and prudence to believe that the accused had committed or was committing a criminal offense." Id. (citing Miller v. City of Anderson, 777 N.E.2d at 1104). "Thus, if the plaintiff in a false arrest action fails to demonstrate the absence of probable cause, or if the record as a whole reflects probable cause for the arrest, then the plaintiff's case must fail." Miller v. City of Anderson, 777 N.E.2d at 1104-1105 (citing Conwell v. Beatty, 667 N.E.2d 768, 775 (Ind. Ct. App. 1996)).

Mr. Keen's state-law false arrest claim fails because there was probable cause to arrest Mr. Keen for unlawful possession of a firearm by a serious violent felon. The City of Indianapolis is entitled to summary judgment on the state-law false arrest claim arising out of Mr. Keen's September 2017 arrest.

## II.   Mr. Keen's Excessive Force Claim

Detectives Swails and West argue that they are entitled to qualified immunity on Mr. Keen's excessive force claims because they weren't the officers that handcuffed Mr. Keen and didn't know about his arm injury, and that Mr. Keen didn't have a clearly established right to be handcuffed in front of his body.

The Fourth Amendment of the U.S. Constitution protects the people against "unreasonable seizures," and such claims are often styled as excessive-force claims. U.S. Const. Amend IV; 42 U.S.C. § 1983. But "[q]ualified immunity shields government officials from liability under Section 1983 'for actions taken while performing discretionary functions, unless their conduct violates clearly

11

established statutory or constitutional rights of which a reasonable person would have known.'" Estate of Escobedo v. Martin, 702 F. 3d 388, 404 (7th Cir. 2012) (citing Brokaw v. Mercer Cnty., 235 F.3d 1000, 1022 (7th Cir. 2000)). "Once the defense of qualified immunity is raised, 'it becomes the plaintiff's burden to defeat it.'" Id. (citing Wheeler v. Lawson, 539 F.3d 629, 639 (7th Cir. 2008)). "To overcome a defendant's invocation of qualified immunity, a plaintiff must show: '(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" Green v. Newport, 868 F.3d 629, 633 (7th Cir. 2017) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). The court has discretion "to decide which element of the qualified immunity defense to address first. If the answer to either question is no, the defendant official is entitled to qualified immunity." Muhammad v. Pearson, 900 F.3d 898, 904-905 (7th Cir. 2018).

The court will start by determining whether Mr. Keen has satisfied the second prong and showed that his alleged right was clearly established at the time he was handcuffed. Mr. Keen's excessive force claim is based on his complaints to Sergeant Bruce and Detective Swails that being handcuffed behind his back exacerbated his arm injury.

"An officer who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to effectuate the arrest, but that right is circumscribed by the Fourth Amendment's insistence on reasonableness." Stainback v. Dixon, 569 F.3d 767, 772 (7th Cir. 2009) (internal citations omitted); Tibbs v. City of Chicago, 469 F.3d 661, 665 (7th Cir. 2006)

("Claims that police officers used excessive force during an arrest are evaluated under the Fourth Amendment's objective reasonableness standard."). "A person has the right to be free from an officer's knowing use of handcuffs in a way that would inflict unnecessary pain or injury, if that person presents little or no risk of flight or threat of injury." Rooni v. Biser, 742 F.3d 737, 742 (7th Cir. 2014). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them . . . ." Graham v. Connor, 490 U.S. 386, 397 (1989); Stainback v. Dixon, 569 F.3d at 772 ("The nature and extent of the force that may be used depends upon the circumstances surrounding the arrest, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.").

"[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Plumhoff v. Rickard, 572 U.S. 765, 778-779 (2014). Courts shall not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Id. (internal citations omitted); White v. Pauly, 137 S. Ct. 548, 552 (2017) ("[T]he clearly established law must be "particularized" to the facts of the case."). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question

13

beyond debate." Ashcroft v. al-Kidd, 563 U.S. at 741; Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) ("Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue.").

Mr. Keen doesn't argue that he shouldn't have been handcuffed; instead, he says being handcuffed behind his back caused him pain because of a preexisting arm injury. When he told Sergeant Bruce that the handcuffs were hurting him, Sergeant Bruce placed Mr. Keen in two sets of handcuffs, putting one cuff from each pair on Keen's wrists and connecting the two sets in the middle. Mr. Keen says that this accommodation wasn't good enough, and he asked if he could be handcuffed in front of his body. Sergeant Bruce and Detective Swails said that he couldn't. The defendants explain that detainees who are handcuffed in front can escape more easily and present issues related to officer safety, that Mr. Keen was a former sheriff's deputy who knew law enforcement tactics, and that Mr. Keen had mental-health issues. They also say that the scope of the search warrant included a weapon.

Given the undisputed facts, the alleged right Mr. Keen asserts is the right to have his double-set of handcuffs moved from behind his back to the front after complaining that the handcuffs exacerbate a previous injury, when the detainee poses a possible risk to officer safety. The case law cited by Mr. Keen doesn't establish such a right. The plaintiff in Tibbs v. City of Chicago complained that his handcuffs were too tight, but he experienced redness on his wrists for less

14

than two days and didn't receive medical care for any alleged injury. 469 F.3d at 666. The court noted that the plaintiff "cite[d] no cases in which any court has permitted a plaintiff to reach a jury based on such mild allegations." Id. In Stainback v. Dixon, the court found that officers were entitled to qualified immunity because they didn't know about the plaintiff's infirmities that were aggravated by handcuffing. 569 F.3d at 773. That situation isn't analogous to Mr. Keen's. Finally, "in Herzog v. Village of Winnetka, 309 F.3d 1041 (7th Cir. 2002), [the court] held the plaintiff was entitled to a jury trial on her excessive force claim where she produced evidence that the arresting officer lacked probable cause for the arrest, shoved her to the ground even though she was not resisting, cracked her tooth by forcing a breath-screening device into her mouth, waited over an hour to loosen handcuffs she complained were too tight, and subjected her to blood and urine testing at a hospital, even though she had passed all field sobriety tests and had registered a 0.00 Breathalyzer reading." Tibbs v. City of Chicago, 469 F.3d at 666. These facts are entirely different from Mr. Keen's situation.

  Mr. Keen didn't have a clearly established right to have his double-set of handcuffs moved to the front after complaining about them, and given the circumstances, the manner in which Mr. Keen was handcuffed didn't run afoul of the Fourth Amendment's reasonableness standard. "[T]he handcuffs were used in a manner that would not have harmed an average arrestee." Day v. Wooten, 947 F.3d 453, 464 (7th Cir. 2020). When Mr. Keen complained of pain, Sergeant Bruce obtained another pair of handcuffs to accommodate Mr. Keen.

Considering the totality of the circumstances, Mr. Keen had no clearly established right to be further accommodated by having the handcuffs moved to the front at risk to officer safety. Detectives Swails and West are entitled to summary judgment on Mr. Keen's excessive-force claim.

### III.     Mr. Keen's Malicious Prosecution Claim

The defendants argue that Mr. Keen's federal malicious prosecution claim fails because that claim doesn't exist as the law is understood in this circuit. The defendants are correct—the law in this circuit is that "there is no such thing as 'Fourth Amendment malicious prosecution.'" Stone v. Wright, 734 Fed. Appx. 989, 989 (7th Cir. 2018) (citing Manuel v. City of Joliet, 137 S. Ct. 911 (2017) ("The district court was right to hold . . . that [plaintiff] lacks a federal, stand-alone claim equivalent to the state-law tort of malicious prosecution."). "Wrongful arrest or detention creates a wrongful-seizure claim, plain and simple, and the constitutional objection is to wrongful custody rather than to a criminal prosecution." Id. (citing Manuel v. City of Joliet, 137 S. Ct. at 917-920). The defendants are entitled to summary judgment on Mr. Keen's malicious prosecution claim.

IV. <u>Conclusion</u>

For the foregoing reasons, the court GRANTS the defendants' motion for summary judgment [Doc. No. 41]. The clerk shall enter judgment for the defendants and against the plaintiff.

SO ORDERED.

ENTERED:  <u>March 23, 2021</u>

<u>  /s/ Robert L. Miller, Jr.       </u>
Judge, United States District Court

Distribution: All electronically registered counsel of record